UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ANTHONY M. SOKOL,                            :

               Plaintiff,          :          **MEMORANDUM AND ORDER**

       -against-                    :          07 Civ. 8442 (SHS)(KNF)

WYETH, INC. and                              :
WYETH PHARMACEUTICALS, INC.,

            Defendants.          :
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Plaintiff Anthony M. Sokol ("Sokol") brings this action against Wyeth, Inc. and Wyeth

Pharmaceuticals, Inc. (collectively "Wyeth") for a violation of Section 806 of the Sarbanes-Oxley

Act ("SOA") of 2002, 18 U.S.C. § 1514A, and unlawful employment practices under the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101- 12213, as amended.  On

March 24, 2008, the defendants made a motion for an order from the Court, pursuant to Fed.  R.

Civ. P. 37, compelling the plaintiff to disclose documents reflecting communications:

(1) between the plaintiff and non-party Mark D. Livingston ("Livingston"); and (2) among the

plaintiff, his attorney and Livingston.  The defendants' submission included Exhibit 10, the

plaintiff's first amended privilege log.  On April 8, 2008, the plaintiff opposed the defendants'

motion contending: (a)  the defendants' request is "*prima facie* overly broad;" (b) the scope of

the plaintiff's request is "overly burdensome;" and (c) the communications sought are protected

by a common interest privilege.  In support of his opposition to the defendants' motion, the

1

plaintiff submitted attachment Nos. 1-8, consisting of certain e-mail messages, for an in camera review by the Court, claiming they are privileged.[1]

To assist the Court in determining the defendants' motion and because of a discrepancy between the documents listed on the plaintiff's first amended privilege log and the attachment Nos. 1-8, submitted to the Court for its in camera review, the Court directed the plaintiff, by an order, dated May 9, 2008, to submit for its in camera review, all the documents listed on his first amended privilege log, and inform it whether another privilege log exists, reconciling the discrepancy, and if so, to submit that comprehensive privilege log to the Court. On May 15, 2008, the plaintiff submitted to the Court, for its in camera review, his second amended privilege log, which included attachment Nos. 1-8, previously submitted, and the "packet of emails" stamped with page Nos. 1-201 ("e-mails packet"). The plaintiff's second amended privilege log was deficient.

On May 22, 2008, the Court directed: (i) the plaintiff to conform his second amended privilege log to Fed. R. Civ. P. 26(b)(5) and Local Civil Rule 26.2 of this court, serve it on the defendants and file it with the court; and (ii) the defendants to advise the Court what impact, if

---

[1] The Court notes that, in its motion, Wyeth expressed concern that Sokol's first amended privilege log may not be complete. When Sokol submitted attachment Nos. 1-8 to the Court, on April 8, 2008, for an in camera review, he argued that "the only fair issue for the Court is to determine if the numerous emails contained in Exhibits 1-8 are covered by the common interest privilege," despite knowing that Exhibits 1-8 were not included in his first amended privilege log, based on which Wyeth's motion was made, and without advising the Court of its plan to serve Wyeth with its second amended privilege log that includes the list of items contained in Exhibits 1-8 the following day. Sokol's submission to the Court, of the items claimed to be privileged, but not included in his privilege log that was in effect at the time of Sokol's response to Wyeth's motion, and his failure to advise the Court about his plan to serve Wyeth with his second amended privilege log the day following his response to the motion, is disconcerting.

any, the conformed second amended privilege log has on their outstanding motion to compel. The Court also provided an opportunity for the plaintiff to submit any response deemed warranted and the defendants to submit any reply. On June 2, 2008, the plaintiff submitted his third amended privilege log, pursuant to the May 22, 2008 order. The defendants advised the Court about the impact of the plaintiff's third amended privilege log on their motion to compel disclosure. The plaintiff filed his response and the defendants their reply.

## BACKGROUND

Sokol was employed by Wyeth as a manufacturing scientist. Wyeth manufactured and distributed Prevnar, a vaccine for prevention of childhood diseases. Sokol alleges, in his complaint, that, in 2005, he raised concerns with Wyeth about Prevnar's lack of compliance with the regulatory requirements of the Food and Drug Administration ("FDA"), but Wyeth failed to report incidents related to its lack of compliance to FDA or to investigate its conduct at issue. Sokol alleges that his complaints to Wyeth, concerning Prevnar's compliance issues, involved "misrepresentation and omission about the quality of products and processes, contradictions in the statements [made] to shareholders and consumers on [Wyeth's] website and [Securities and Exchange Commission] filings, and failures to report or concealments from [FDA]." Sokol alleges that, as a result of his complaints concerning Prevnar, Wyeth retaliated against him by: (i) creating a hostile work environment for him; (ii) reducing his duties and research opportunities; (iii) suspending him from employment; and (iv) terminating his employment. Additionally, Sokol alleges, Wyeth terminated him on the pretext of its concern with Sokol's disability, in violation of ADA. Wyeth denies Sokol's allegations and asserts numerous affirmative defenses.

3

Sokol is represented in this action by Thad M. Guyer, Esq. of T.M. Guyer and Ayers & Friends, P.C.  On December 24, 2007, Wyeth served the plaintiff with its first request for the production of documents, seeking all documents that evidence communications between Sokol and Livingston from 2003 to the present relating to Wyeth or any allegations in the complaint or any defenses to the allegations in the complaint.  Without producing any documents in response to Wyeth's request, Sokol objected that Wyeth's request was "overly broad, unduly burdensome" and "it requests documents outside of the possession and control of Plaintiff.  Additionally, Plaintiff objects to Defendant seeking information protected by the common claims privilege." On February 29, 2008, Sokol submitted a privilege log, containing 25 items, to Wyeth, claiming common interest privilege for all the items listed.  On March 19, 2008, after Sokol testified at his deposition during the administrative proceeding, conducted in connection with the underlying SOA claim, that he exchanged hundreds of communications with Livingston, Sokol presented a first amended privilege log, containing 72 items, to Wyeth.  In his first amended privilege log Sokol asserted the common interest privilege for all items listed there, attorney-client privilege for some items and the attorney work-product doctrine protection for some items.  On March 19, 2008, Sokol informed Wyeth that he and Livingston had filed jointly, on November 20, 2006, a false claim action against Wyeth and that they are represented by counsel from the law firm Davis, Cowell & Bowe LLP.  On April 9, 2008, Sokol disclosed to Wyeth its second amended privilege log, containing 102 items, claiming the common interest privilege for most items, attorney-client privilege for some items and  the attorney work-product doctrine protection for some items.  This motion followed.

**DISCUSSION**

The scope of discovery in a federal action is broad providing that, unless otherwise limited by court order, a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. See Fed. R. Civ. P. 26(b)(1). At the pretrial discovery stage of a litigation, relevancy, as it relates to information sought to be disclosed, is broadly construed and incorporates information which is not admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1); Hickman v. Taylor, 329 U.S. 495, 507, 67 S. Ct. 385, 392 (1947)("discovery rules are to be accorded a broad and liberal treatment"). However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure] or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues.

Fed. R. Civ. P. 26 (b)(2)(C).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R.

Civ. P. 26 (b)(5)(A); see also Local Civil Rule 26.2 of this court.  A party may move for an order

compelling disclosure or discovery, after a good faith attempt to resolve the issue with the party

making disclosure or discovery, without court action, fails.  See Fed. R. Civ. P. 37 (a)(1).  To

prevail on a motion to compel, a party objecting to a discovery request on the grounds that the

information sought is irrelevant, overly broad or unduly burdensome, must do more than

"'simply inton[e] [the] familiar litany' that [requests] are burdensome, oppressive or overly

broad."  Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum,

105 F.R.D. 16, 42 (S.D.N.Y. 1984).  The resisting party "must show specifically how, despite the

broad and liberal construction afforded the federal discovery rules, each [request] is not relevant

or how each [request] is overly broad, burdensome or oppressive, . . . by submitting affidavits or

offering evidence revealing the nature of the burden"  Id. (internal citations omitted).  A district

court has broad discretion in deciding discovery issues.  See Wills v. Amerada Hess Corp., 379

F.3d 32, 41 (2d Cir. 2004).

*Relevancy and Scope*

Wyeth contends Sokol's communications with Livingston, from 2003 to the present,

relating to Wyeth, Prevnar or any of Sokol's allegations or Wyeth's defenses, are relevant

because a "critical issue in this case is whether, in making his complaints, Sokol reasonably and

in good faith believed that he was providing information that constituted securities fraud or

violation of a law relating to fraud against shareholders."  According to Wyeth, that Sokol

discussed with Livingston what language was necessary to have his complaint be deemed

protected activity, for the purposes of SOA, demonstrates he was not genuinely interested in

raising concerns about securities fraud.  Furthermore, Wyeth contends, Sokol's contemporaneous

communication with Livingston concerning his complaints is "highly relevant to Sokol's state of mind, credibility, and other issues in this action." Wyeth asserts its document request is reasonable because it is "limited in timeframe, limited to communications between Plaintiff and one other individual, and limited in scope to elicit documents relating to the subject matter of this case." Moreover, Wyeth maintains, the production of documents requested does not impose an undue burden on Sokol because "there are no more than a few dozen emails at issue and they have already been gathered by Plaintiff in preparing his log."

Sokol contends "[t]o demand all emails between Sokol and Livingston 'relating to Wyeth' is *prima facie* overly broad." Additionally, because these two former Wyeth's employees "sent hundreds of pages of emails to each other over the past several years, including in their capacities as co-relators in their *qui tam* action against Wyeth, the unbridled 'relating to Wyeth' scope is also overly burdensome, not just overly broad." According to Sokol, "Wyeth has no fair basis under the relevance standard of Rule 26 to demand all Prevnar 'related' email" because this is the SOA employment case and not the false claim Prevnar case.

The Court finds that Wyeth's request for communications between Sokol and Livingston relating to Wyeth, Prevnar, Sokol's allegations or Wyeth's defense is reasonable because the documents sought appear to be facially relevant. Sokol provides no authority for the proposition that the mere quantity of communication sought, i.e. "[h]undreds of pages of e-mails," is sufficient to demonstrate that Wyeth's discovery request is irrelevant, overly broad or unduly burdensome. His conclusory statements that: (i) Wyeth's request is "*prima facie* overly broad" because Sokol and Livingston exchanged hundreds of pages of e-mails to each other over the past several years; and (ii) "almost anything they would email each other about would be broadly

'related to Wyeth,'" are not sufficient, by themselves, to establish a lack of relevance or that the discovery request is overly broad or unduly burdensome. Similarly, absent evidentiary support, Sokol's contention that "almost anything" Sokol and Livingston sent to each other via e-mail would be related to Wyeth is speculative. The Court finds that Sokol failed in establishing that Wyeth's request is irrelevant, overly broad or unduly burdensome. Therefore, Sokol must disclose all documents, erroneously listed in his privilege log, to which no privilege is claimed.

*Attorney-Client Privilege*

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." Swidler & Berlin v. United States, 524 U.S. 399, 403, 118 S. Ct. 2081, 2084 (1998). The privilege, designed to facilitate openness and full disclosure between the attorney and the client, shields from discovery advice given by the attorney as well as communications from the client to the attorney. See Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981). The attorney-client privilege also protects from disclosure "communications made to ceratin agents of an attorney, including accountants hired to assist in the rendition of legal services." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). "A document is not privileged merely because it was sent or received between an attorney and client. The document must contain confidential communication relating to legal advice." Dep't of Econ. Dev. v. Arthur Andersen & Co., 139 F.R.D. 295, 300 (S.D.N.Y. 1991). A party invoking the attorney-client privilege has the burden of establishing: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." United States v. Constr. Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). The client's or the attorney's communications with the

persons who act as the attorney's agents and whose assistance is indispensable to the attorney's work, are protected by the attorney-client privilege. See United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961); New York Civil Practice Law and Rules § 4548.

The attorney-client privilege may be waived by the voluntary disclosure of otherwise privileged material to a third party, unless the third party is the client's agent. See In re Application Pursuant to 28 U.S.C. § 1782, __F.R.D.__, 2008 WL 919707, at *4 (S.D.N.Y. 2008). "To avoid waiver, the proponent of the privilege must show, first, that the client had a reasonable expectation of confidentiality in the disclosure of the material to the third party, and second, that 'disclosure to the third party was necessary for the client to obtain informed legal advice.'" Id. Moreover,"the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communication between attorney and client." United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999). Nonetheless, "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." Kovel, 296 F.2d at 922. If what is sought is not legal advice but the services a third party offers or if the advice sought is the third party's and not the attorney's, the attorney-client privilege does not apply. See id.

A "common interest" doctrine, erroneously called "common interest privilege" or "joint defense privilege," is an exception to the general rule that voluntary disclosure of confidential, privileged material to a third party waives any applicable privilege. See In re Commercial Money Ctr., Inc., Equipment Lease Litig., 248 F.R.D. 532, 536 (N.D. Ohio 2008). The common interest doctrine precludes a waiver of the underlying privilege concerning confidential

communications between the parties "made in the course of an ongoing common enterprise and intended to further the enterprise," irrespective of whether an actual litigation is in progress. Schwimmer, 892 F.2d at 243; see Griffith v. Davis, 161 F.R.D. 687, 692 (C.D. Cal. 1995). Thus, the common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy. See Bank Brussels Lambert v. Credit Lyonnais, 160 F.R.D. 437, 447 (S.D.N.Y. 1995). "The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter." Schwimmer, 892 F.2d at 243-44 (citation omitted). The common interest doctrine "is not an independent source of privilege or confidentiality." In re Commercial Money Ctr., Inc., Equipment Lease Litig. 248 F.R.D. at 536. If a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply. See id.

Wyeth contends Sokol did not demonstrate that the attorney-client privilege applies to each of the documents claimed to be privileged. According to Wyeth, Sokol's assertion that Livingston was his counsel's "consultant" should be rejected because "[i]t is insufficient for an attorney to simply name one of his clients as a 'consultant' to another client and thereby invoke the attorney-client privilege with respect to all of their communications." Wyeth contends "this is not a situation where [Sokol's counsel] has retained Livingston as an expert to assist him in understanding complex information his client is conveying to him that he would not otherwise be able to understand." Wyeth further contends: (i) Sokol did not provide evidence of an agreement

10

between him and Livingston to pursue a joint legal strategy and keep their communications confidential; (ii) Sokol and Livingston did not share a "common legal interest" because their interests are not "identical" and their sharing a desire to succeed in an action does not create common interest; (iii) Sokol cannot establish that his communications with Livingston were in furtherance of a common legal enterprise; and (iv) Sokol waived his attorney-client privilege when he voluntarily disclosed the allegedly privileged communication with Livingston to nurse Sheila Burke at Wyeth.

In advising the Court about the impact of the plaintiff's third amended privilege log on its motion, Wyeth contends: (a) it already received from Sokol document page Nos. 43-54; (b) all documents listed in Sokol's third amended privilege log that are non-privileged must be produced, to the extent they are responsive to its discovery requests; (c) Sokol failed to establish privilege for e-mail communications between Livingston and an unidentified individual who was a "potential" co-relator in the qui tam action and between Livingston and David Graham ("Graham"), a former client of the Government Accountability Project; (d) Sokol failed to establish the common interest doctrine applies to protect Livingston's communication with Dan Donovan, Senior Investigative Counsel for the Senate; (e) all e-mail communications between Sokol and Livingston that do not contain privileged information must be produced; and (f) Sokol failed to establish that the common interest doctrine applies to his communications with Livingston.  Wyeth also contends that certain documents from Sokol's third amended privilege log appear to be privileged and asks the Court to review them and determine whether they are indeed privileged.

Sokol contends that he retained counsel in the first week of August 2005 and that, during

his first telephone conversation with counsel, counsel explained that his client Livingston had

become experienced with how SOA applies to their common employer, Wyeth, concerning their

common assignments to Wyeth's Prevnar vaccine production departments.  According to Sokol,

counsel explained that Sokol and Livingston "had common issues, including regarding the

'reasonable belief' requirements of [SOA]" and asked Sokol if he "would be willing to help or

even to testify in [] Livingston's case."  Sokol contends that both cases involved "our reports of

quality control issues in the manufacturing of Prevnar vaccine" and Wyeth's "compliance with

the same federal court Consent Decree."  Since both Sokol and Livingston could testify in the

other's case and share the evidence gathered through depositions and discovery, Sokol agreed to

counsel's proposition.  According to Sokol, pursuant to counsel's arrangement, he and

Livingston started communicating about their respective cases in the second week of August

2005.  Sokol maintains that: (a) he and Livingston intended their "communications to be

protected by attorney-client privilege;" (b) his counsel "explained this to [him];" and (c)

Livingston reiterated what counsel explained to Sokol when Livingston asked him: "Would you

include [counsel's] e-mail address in all of our e-mail correspondence?  This will ensure that all

of our conversations by e-mail will be protected by client-attorney privilege."  Sokol contends

that, after his counsel reviewed his grievances and Livingston's comments on them, he engaged

Livingston as a "consultant" to his law firm 'for the purposes of helping me re-write my

complaint as to the technical and legal issues."  Subsequently, Sokol maintains, upon his

counsel's instruction, Livingston provided him with further "consulting" and "advice" and, in

December 2005, he and Livingston "began talking with attorneys about representing us in a qui

tam False Claims Act case." Livingston submitted a declaration[2] in opposition to Wyeth's motion, making almost identical contentions.

In his response to Wyeth's advising the Court of the impact of Sokol's third amended privilege log on the defendants' motion to compel, Sokol concedes he included non-privileged documents on his third amended privilege log. However, according to Sokol, he only did so because those non-privileged documents "are implicated in the dispute because they have been withheld based on relevance as well." Additionally, Sokol argues, "[s]ome documents previously and rightly withheld on the basis of relevance have now been migrated over on to the privilege log since our timely objections on relevance await ruling."

The Court has reviewed Sokol's third amended privilege log as well as the parties' submissions, in connection with the defendants' motion to compel disclosure of documents. As noted above, the common interest doctrine is not an independent source of privilege or confidentiality and applies only to a communication that is already protected by a privilege. In his third amended privilege log, Sokol asserted "[c]ommon interest privilege" for numerous items, without indicating the nature of the privilege with respect to which the common interest doctrine is asserted. For a significant number of items Sokol asserted "[c]ommon interest

_____

[2] The copy of Livingston's declaration submitted to the Court appeared to be incomplete. It contained pages numbered 1 and 2 and a last, unnumbered page, which started with an incomplete sentence. It appeared that paragraph No. 7 was not included or was included partially. After the Court made an inquiry with counsel to the plaintiff about the missing portion of the document, counsel explained that a portion of paragraph No. 7 "somehow got off from the top of page 3 in the transmission process from Mr. Livingston. . . . Consequently, I do not have a declaration with Mr. Livingston's signature on the full page 3, as the page 3 on the declaration I filed and served on counsel is indeed cut off at the top." Inasmuch as the document, as executed, was not served in its entirety on the defendant or submitted to the Court, the Court will disregard the missing portion of paragraph No. 7, and will consider Livingston's declaration in the incomplete form in which it was served on the defendant and submitted to the Court.

13

privilege and attorney client privilege." The Court will assume, for the purpose of the instant motion, that Sokol's common interest doctrine assertions, where alone, are based on the attorney-client privilege and will analyze them accordingly.

Sokol's communications with Livingston are not communications between a client and his counsel. Generally, Sokol's communications with Livingston, a third party, are not protected by the attorney-client privilege, unless Livingston acted as Sokol's agent, at the time communications were made. Sokol does not claim and the record does not demonstrate that Livingston acted as Sokol's agent. Sokol also does not claim and the record does not demonstrate that Livingston was an agent of his counsel whose assistance was indispensable for the attorney's work. Rather, Sokol maintains: (i) Livingston was his counsel's "consultant;" and (ii) by including his counsel's e-mail address in his communications with Livingston he intended that his communications with Livingston "be protected by attorney-client privilege."

Sokol misunderstands the burden imposed on him in establishing the attorney-client privilege. It is the intent that the communication be and is in fact kept confidential, not the intent that the communication be protected by the attorney-client privilege, that Sokol must demonstrate. Sokol does not make citation to any authority, and the Court finds none, for the proposition that copying of the communications between a client and a third party to the client's attorney triggers, by itself, the attorney-client privilege. Moreover, while Sokol contends he intended his communications with Livingston to be confidential by assuring he included his counsel's e-mail address in those communications, e-mail communication contained in e-mails packet page Nos. 1-201, spanning from August 31, 2005, through July 2006, that were directly sent to or received by Sokol and Livingston, were not copied to Sokol's counsel and no

14

explanation was provided by Sokol of the reason for omitting his counsel's e-mail address from those communications. As noted above, the vital element in establishing that the attorney-client privilege applies is that the communication is made in confidence for the purposes of obtaining legal advice from the attorney and if what is sought is not legal advice but "consultant's" services, or if the advice sought is not that of the attorney but that of the "consultant," the attorney-client privilege does not apply.

Sokol and Livingston were represented by the same attorney in their separate SOA litigations against Wyeth. On August 18, 2005, Sokol's counsel engaged Livingston as a "consultant" to provide "technical expertise" in Sokol's case. Since Livingston was not an agent for Sokol or his counsel, prior to August 18, 2005, the Court finds that the communications between Sokol and Livingston, prior to August 18, 2005, are not protected by the attorney-client privilege. The Court also finds that the attorney-client privilege was waived with respect to the communications between Sokol and his counsel, prior to August 18, 2005, because Sokol's counsel disclosed these communications to another client, and that client was neither Sokol's nor his counsel's agent at the time the communications were made.

That Sokol's counsel engaged Livingston as a "consultant," who will provide "technical expertise," demonstrates that the purpose of the engagement was to assist Sokol's counsel with rendering legal advice to Sokol, not to formulate legal strategy that would be common to Sokol and Livingston in their respective litigations, which would further their common enterprise. The in camera review of the e-mail communications, listed in Sokol's third amended privilege log, demonstrates that no common interest arrangement existed at any time between Sokol and Livingston, with respect to the instant litigation, and no common purpose existed to benefit from

15

the guidance of their common counsel with respect to their independent SOA litigations. The communications between Livingston and Sokol were focused almost entirely on Sokol's case and Livingston's case – which was in an advanced stage at the time communications were made, was mentioned by Livingston occasionally, for the purpose of updating Sokol on its status, not to develop a common legal strategy. In fact, it does not appear, from the communications before the Court, that Sokol ever inquired on his own about the status of Livingston's SOA litigation or the legal strategy employed in that action. Accordingly, the Court finds that the common interest doctrine does not protect the communications between Sokol and his counsel, disclosed to Livingston prior to August 18, 2005.

The in camera review also shows that Livingston acted as a direct advisor to Sokol, as he explained in his communication to Graham, dated October 1, 2005, 8:35 p.m., e-mails packet page No. 41: "I've been communicating with and advising Anthony, along with legal counsel Thad Guyer." In his e-mail to Sokol, dated December 5, 2005, 4: 56 a.m., e-mails packet page No. 32, Livingston demonstrated his role of direct advisor to Sokol when he stated: "I would advise you to do what you want to do. . . . I would at a minimum make sure that . . . ." However, for a communication to be protected by the attorney-client privilege, its purpose must be seeking or rendering legal advice from an attorney, not from a consultant. Legal advice cannot be given by one who is not an attorney and no attorney-client privilege is afforded to any advice purporting to be legal from one who is not an attorney, even if that person was engaged by an attorney as a "consultant" to provide "technical expertise." Additionally, although Sokol's counsel claimed to have engaged Livingston as a "consultant" to provide him with "technical expertise" in Sokol's case, except for counsel's e-mail communications to Sokol, dated August

16

30, 2005, Attachment No. 6, page Nos. 1-5, no evidence exists in other e-mail communications before the Court that Sokol's counsel: (i) was aware of the communications between Sokol and Livingston that are not copied to him; (ii) read the communications that are copied to him; or (iii) acted on any communications between Sokol and Livingston. Therefore, the attorney-client privilege does not protect any confidential communications between Sokol and Livingston, the purpose of which is not obtaining legal advice from Sokol's counsel.

Sokol claims the attorney-client privilege applies to numerous e-mail communications with Livingston, the bodies of which consist of the text "FYI," accompanied by a document to which no privilege is claimed. One example of this is found on the e-mails packet page Nos. 178-182. The body of that e-mail communication from Livingston to Sokol, dated March 7, 2006, 8:26 p.m., states: "FYI Anthony. Mark." This text announces that another e-mail, consisting of a certain report, is being forwarded for which no privilege is claimed. The Court finds that asserting the attorney-client privilege in this manner is frivolous, because no basis exists for asserting the attorney-client privilege for this type of communication. Accordingly, any communication consisting of the text "FYI," or a similar announcement indicating that a document is being forwarded with or included in that communication, and accompanied by that document, for which no privilege is claimed, must be disclosed to Wyeth.

Sokol also asserts a common interest privilege with respect to certain e-mail messages between Livingston and an unidentified person, who was invited to join and allegedly "agreed to be co-realtor" in a separate false claims action Livingston and Sokol pursued jointly. However, in order for the common interest doctrine to apply to a communication, the attorney-client privilege must exist first. While the attorney-client privilege applies to communications that are

17

in furtherance of the common objective, between Livingston and Sokol, as joint clients in their common false claims action, Sokol makes no citation to any authority that extends the attorney-client privilege and the common interest doctrine to unidentified potential litigants. Therefore, the Court finds that the communications involving unidentified persons are not protected by the attorney-client privilege.

Sokol asserts the attorney-client privilege with respect to certain e-mail communications between Livingston and Livingston's counsel in his SOA action. One example is the e-mail communication from counsel to Livingston, dated March 8, 2006, 10:14 a.m., entitled "Oral Argument," which summarizes for Livingston the oral argument conducted in Livingston's action in his absence. Although this communication is between the counsel and his client, its content does not demonstrate that legal advice was sought or rendered. A summary by counsel of a public court proceeding for a client, without more, is not protected by the attorney-client privilege. While such a summary could arguably fall within the scope of the work-product doctrine, no such protection was claimed by Sokol. The Court finds that e-mail communications between counsel and Livingston, the content of which does not evidence that legal advice was sought or rendered, are not protected by the attorney-client privilege, and that, if not asserted to shield such communications from disclosure, the work-product doctrine protection, as regards them, is waived.

Certain e-mail communications between Sokol and Livingston, alleged to be shielded from disclosure by the attorney-client privilege, pertain to their joint litigation in which they were represented by another attorney. Those confidential communications, as indicated in the Conclusion section of this Memorandum and Order, which were generated for the purpose of

18

seeking or rendering legal advice through their common counsel, are protected by the attorney-client privilege.

*Work-Product Doctrine*

The work-product doctrine prohibits a litigant from making unwarranted inquiries into the files and the mental impressions of an adverse party's legal counsel.  See Hickman, 329 U.S. at 510-511, 67 S. Ct. at 393.  The doctrine is set forth in Rule 26 of the Federal Rules of Civil Procedure:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).

A document is created in anticipation of litigation "if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation."  United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998).  The work-product doctrine does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation."  Id.  "Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation."  Id.  The burden is on the party claiming protection to establish that the work-product doctrine applies.  See Constr. Products Research, 73 F.3d at 473.  The work-product doctrine protection is qualified and may be overcome if the party

seeking disclosure makes "an adequate showing of substantial need for the document and an inability to obtain its contents elsewhere without undue hardship." Adlman, 134 F.3d at 1202-03.

Generally, the voluntary production of a document that is shielded from disclosure by the work-product doctrine waives any claim by a litigant that the document may be withheld from disclosure under that doctrine. See U.S. v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003). However, the common interest doctrine, which provides an exemption to a waiver, also applies to communications protected by the work-product doctrine. See Pucket v. Hot Springs School Dist. No. 23-2, 239 F.R.D. 572, 583 (D.S.D. 2006); In re Steinhardt Partners, 9 F.3d 230, 234-36 (2d Cir. 1993); Transmirra Products Corp. v. Monsanto Chemical Co., 26 F.R.D. 572, 578 (S.D.N.Y. 1960). If a communication is not protected by the work-product doctrine, the common interest doctrine does not apply. In re Commercial Money Ctr., Inc., Equipment Lease Litig. 248 F.R.D. at 536.

Sokol asserted the work-product doctrine with respect to two communications: (1) e-mails packet page Nos. 73-127, consisting of an e-mail message from Sokol to Livingston, dated July 29, 2006, 5:37 a.m., the body of which consists of a forwarded e-mail message with an attached draft of the complaint in their common qui tam action, from the law clerk for their attorney to Sokol, dated July 28, 2006, 4:07 a.m.; and (2) e-mails packet page No. 169, consisting of an e-mail message from Livingston to Sokol, dated May 21, 2006, 9:01 a.m., the body of which consists of (i) the words "FYI" and (ii) notification to recipient of the e-mail message that various attachments are attached. However, the attachments in connection with the communication on the e-mails packet page No. 169 were not submitted to the Court.

The Court finds that the communication identified as e-mails packet page Nos.73-127 is protected by the work-product doctrine, because it is a communication from Sokol and Livingston's attorney and contains a draft of the complaint, prepared in anticipation of their litigation against Wyeth, pursuant to the False Claims Act.  Wyeth failed to show that: (a) the communication is otherwise discoverable; and (ii) it has substantial need for it to prepare its case and cannot, without undue hardship, obtain its substantial equivalent by other means.

Sokol claims, in his third amended privilege log, that the e-mail communication identified as e-mails packet portion of page No. 169, is protected by the work-product doctrine because it consists of "forwarding of research on Prevnar, compiled at request of counsel."  The Court finds no support for the contention that the attachments, claimed to contain research on Prevnar, were complied at the request of counsel or that they were prepared because of the litigation.  Therefore, the e-mail communication from Livingston to Sokol, identified as the e-mails packet page No. 169, is not protected by the work-product doctrine.

## CONCLUSION

Therefore, as set forth above, the Court finds that the following communications are shielded from disclosure by the attorney-client privilege:

- Attachment No. 1, page Nos. 1-4;

- Attachment No. 5, e-mail communication from counsel to Sokol, dated August 18, 2005, 1:16 a.m.;

- Attachment No. 6, page Nos. 1-5;

- Attachment No. 8, page Nos. 1-3;

- e-mails packet page Nos. 23-24, 128-132;

21

- e-mail communication from Livingston to counsel, dated July 30, 2006, 4:58 p.m., e-mails packet Nos. 137-138 (but not the e-mail communication from an unidentified person to Livingston, dated July 30, 2006, 12:36 p.m., e-mails packet page No. 138);

- e-mail communication from Livingston to counsel, dated October 17, 2005, 3:11 p.m., e-mails packet page Nos. 141-142 and 144-145;

- e-mail communications from counsel to Livingston, dated July 29, 2006, 7:11pm, and July 28, 2006, 14:01:06 -0700 (PDT), e-mails packet page Nos. 148-150;

- e-mail communication from Livingston to counsel, dated March 8, 2006, 10:35 a.m., e-mails packet page Nos. 164-165; and

- e-mail communication from counsel to Sokol, dated August 11, 2006, 11:17 a.m., e-mails packet page No. 185.

The Court also finds that the e-mails packet page Nos. 73-127, are shielded from disclosure by the work-product doctrine. On or before August 8, 2008, the plaintiff shall disclose to the defendants all remaining communications from his third amended privilege log.

Dated: New York, New York
      August 4, 2008

SO ORDERED:

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE